**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:21-cv-81715

DUSTIN LLOYD, individually and as
guardian of his minor children, P.L., G.L.,
and E.L., et al.,

        Plaintiffs,

v.

SCHOOL BOARD OF PALM BEACH
COUNTY, a political subdivision of the State
of Florida, et al.,

        Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' VERIFIED AMENDED COMPLAINT**

    Defendants, the School Board of Palm Beach County, Michael Burke, and Frank Barbieri, Jr. (collectively, "School Board"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12, hereby move to dismiss Plaintiffs' Verified Amended Complaint, filed on September 27, 2021. ECF No. 16.

**I.    Background**

    In this action, Plaintiffs bring various federal and state law claims challenging the School Board's requirement that students wear facial coverings while indoors, with limited exceptions.[1] As explained below, Plaintiffs' claims against the Superintendent and Board Chair in their official capacities should be dismissed as redundant. Further, their Verified Amended Complaint should be dismissed in its entirety, as it fails to comply in multiple, material respects with the requirement

---

[1] At the time this lawsuit was filed, the requirement was found in School Board Emergency Policy 5.326, which is now suspended. On October 6, 2021, the School Board adopted Emergency Policy 5.3261, "Emergency Protocols and Prevention Strategies for Students due to COVID-19," available at http://go.boarddocs.com/fl/palmbeach/Board.nsf/goto?open&id=C7KMTN5C5388 (last visited Oct. 11, 2021). The provisions concerning facial coverings are materially unchanged and remain in effect, however. *See* Policy 5.3261, ¶ 4.b.

of "a short and plain statement of the claim" in Federal Rule of Civil Procedure 8(a)(2). Finally, the Verified Amended Complaint should be dismissed because Plaintiffs' federal claims lack merit, the Court should decline to exercise jurisdiction over the state law claims, and the claim for a "permanent injunction" is not a claim. Plaintiffs' federal claims have been rejected by seemingly every federal court to consider them. And there are three reasons for declining supplemental jurisdiction over the state law claims: the lack of a viable federal claim, the novelty of the issues under Florida law, and the multiple proceedings pending throughout Florida addressing the same or critically related issues.

**II.     Argument**

    A. <u>Michael Burke and Frank Barbieri, Jr. should be dismissed, as the claims against them are redundant.</u>

In addition to the School Board of Palm Beach County, Plaintiffs have named as Defendants Michael Burke and Frank Barbieri, Jr., but only in their official capacities as the Superintendent and the Board Chair, respectively. Mr. Burke and Mr. Barbieri should be dismissed from this lawsuit, as the claims against them are redundant of the claims against the School Board. *See Higdon v. Fulton County, Georgia*, 746 F. App'x 796, 799 (11th Cir. 2018) ("[O]fficial-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant."); *Braden Woods Homeowners Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019) (affirming dismissal of official in his official capacity; "the suit against Barnott in his official capacity is redundant, and he would be bound as an employee of the County by any injunctive or declaratory relief granted.").

    B. <u>Plaintiffs' Verified Amended Complaint fails to comply with Federal Rule of Civil Procedure 8(a)(2).</u>

Plaintiffs' Amended Complaint should be dismissed because they have effectively tried to prove their case through their pleading, including by presenting extensive evidence and even the case law upon which they rely, all in violation of the requirement that they provide merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

First, Plaintiffs extensively plead evidentiary material in their Amended Complaint, mostly what they assert as scientific facts, which violates Rule 8(a)(2). *See Great Am. Fun Corp. v. Hosung New York Trading Inc.*, 935 F. Supp. 488, 489 (S.D.N.Y. 1996) ("[A] pleading containing a great deal of evidentiary material does not qualify as a 'short and plain' statement required by

Rule 8(a).") (quotation marks omitted); *see also In re Beef Indus. Antitrust Litig., MDL Docket No. 248*, 600 F.2d 1148, 1169 (5th Cir. 1979) ("[E]vidence pleading, as distinguished from the pleading of ultimate facts, is not favored under the Federal Rules."); *Zinn v. GMAC Mortg,* 1:05 CV 01747 MHS, 2006 WL 418437, at *3 (N.D. Ga. Feb. 21, 2006) ("The complaint need not, and indeed should not, plead evidence.").

Second, many of Plaintiffs' factual assertions are appended with citations to various publications, such as news reports or scientific literature. As a result, Plaintiffs have incorporated hundreds more pages into their already lengthy complaint. This too is contrary to Rule 8(a)(2). *Cf. Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) ("[T]o force the parties and the court to sift through an additional 100 pages of letters, reports, and contracts would frustrate the purpose of Rule 8(a)(2).").

Finally, Plaintiffs also include extensive citations to case law throughout their Amended Complaint. While it is appropriate for Plaintiffs to set forth the legal provisions under which they are asserting claims, these extensive discussions of case law are not necessary and again violate Rule 8(a)(2). *See Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 340 (S.D.N.Y. 2005) ("references to expert reports, statutory provisions, case law, legislative histories, as well exhibits and an attorney's affidavits" were "entirely unnecessary to any 'short and plain statement of the claim'") (quoting Fed. R. Civ. P. 8(a)(2)); *Jones v. Salley*, 2:12-CV-510-FTM-29DN, 2013 WL 1277892, at *2 (M.D. Fla. Mar. 28, 2013) (directing that plaintiff "not cite to case law" in amended pleading).

Here, Plaintiffs' pleading of evidence and other impertinent matter is so pervasive in the Amended Complaint that the School Board is unable to respond as required by Federal Rule of Civil Procedure 8(b). Accordingly, rather than moving to strike large swaths of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), the School Board requests dismissal for Plaintiffs' failure to comply with Rule 8.

> C. Plaintiffs fail to state a federal claim upon which relief can be granted and the Court should decline to exercise supplemental jurisdiction over their state law claims.

Plaintiffs have ten counts in their Verified Amended Complaint: (1) Count I: Supremacy Clause (Federal Preemption); (2) Count II: Fourteenth Amendment to the United States Constitution (Right to Privacy, Parental Rights, and Right to Bodily Autonomy); (3) Count III: Fifth and Fourteenth Amendments (Right to Due Process); (4) Count IV: Fourteenth Amendment (Right to Equal Protection); (5) Count V: Invalid Exercise of Statutory Authority under Florida

law; (6) Count VI: Article I, Section 9 of the Florida Constitution (Due Process); (7) Count VII: Article I, Section 2 of the Florida Constitution (Equal Protection); (8) Count VIII: Article I, Section 23 of the Florida Constitution (Privacy); (9) Count IX: Florida Parents' Bill of Rights, §§ 1014.01-.06, Fla. Stat.; and (10) Count X: Permanent Injunction, based on the preceding federal and state claims. *Id.*, pp. 63-85. The federal claims in Counts I through IV are all brought under 42 U.S.C. § 1983 (Section 1983). *Id.*, pp. 63-72.

As explained below, Plaintiffs fail to state a claim upon which relief can be granted with respect to their claims asserting violations of federal law. Plaintiffs' state law claims also fail, but the Court should decline to exercise supplemental jurisdiction over them.

### 1. *Standard for motion to dismiss under Rule 12(b)(6).*

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted). Thus, "[o]n a motion to dismiss, the factual allegations in the complaint are taken as true, even if they are subject to dispute." *Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (quotation marks omitted). "But we are not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### 2. *Plaintiffs' preemption claim fails because there is no private right of action to enforce the Federal Food, Drug, and Cosmetic Act (FDCA) and it is not implicated by the Board's requirement to wear facial coverings to attend school (Count I).*

In Count I, Plaintiffs contend that the Board's Policy violates the Supremacy Clause and is preempted by a federal statute, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), part of the FDCA, relating to

"Authorization for medical products for use in emergencies" (EUA statute).

As a preliminary point, Plaintiffs try to bring their preemption claim through Section 1983, but "the Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (footnote omitted). "[T]he availability of the § 1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations sufficiently specific and definite to be within the competence of the judiciary to enforce, is intended to benefit the putative plaintiff, and is not foreclosed by express provision or other specific evidence from the statute itself." *Id.* (quotation marks and citations omitted).

While it is not clear that any of the *Golden State Transit* factors are satisfied, the last one is dispositive. The FDCA provides that there is no private right of action to enforce its provisions. *See, e.g.*, *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018) ("[T]he FDCA says that its requirements may only be enforced by the United States government.") (citing 21 U.S.C. § 337(a)). Because "Congress's intent is plain" that "there is no private right of action under the FDCA," it follows that "Plaintiffs may not use § 1983 as a means to enforce the FDCA." *Foli v. Metro. Water Dist. of S. California*, No. 11CV1765 JLS BLM, 2012 WL 1192763, at *3 (S.D. Cal. Apr. 10, 2012).

Because the FDCA is not enforceable in a private action, Plaintiffs also fail to state a claim against the School Board for any purported violation of the FDCA. *See Guilfoyle v. Beutner*, No. 221CV05009VAPMRWX, 2021 WL 4594780, at *27 (C.D. Cal. Sept. 14, 2021) (rejecting identical preemption challenge to school board's masking requirement based on EUA statute because FDCA does not provide private right of action). Further, Plaintiffs fail to allege sufficient facts to suggest plausibly that the School Board would be subject to the EUA statute in the first place. *See* 21 U.S.C.A. § 360bbb-3(e)(1)(A) (conditions for authorization apply to "a person who carries out any activity for which the authorization is issued"); *cf. Whether Section 564 of the Food, Drug, & Cosm. Act Prohibits Entities from Requiring the Use of A Vaccine Subject to an Emergency Use Authorization*, 2021 WL 3418599, at *5 (O.L.C. July 6, 2021) (noting that most entities imposing vaccination requirements, such as employers or universities, "do not carry out any activity for which an EUA is issued."). Finally, courts have rejected materially comparable challenges under the EUA statute to vaccination requirements as conditions of employment or school enrollment. *See Valdez v. Grisham*, No. 21-CV-783 MV/JHR, 2021 WL 4145746, at *4

(D.N.M. Sept. 13, 2021); *Klaassen v. Trustees of Indiana Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021); *Bridges v. Houston Methodist Hosp.*, No. CV H-21-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021).

Plaintiffs also lump in a claim that the Board is violating 21 C.F.R. § 50.20. ECF No. 16, ¶¶ 266-68. They cannot plausibly allege that the Board's Policy pertains to "research covered by these regulations," however. 21 C.F.R. § 50.20.

For all of the above discussed reasons, Plaintiffs fail to state a claim relating to 21 U.S.C. § 360bbb-3(e)(1)(A)(ii).

> 3. *Plaintiffs fail to state a claim for violation of their federal Substantive Due Process rights, because the Board's Policy does not infringe upon any federal constitutional rights and it withstands rational basis review (Counts II and III).*

In Count II, Plaintiffs claim violations of Fourteenth Amendment to the United States Constitution with respect to their "Right to Privacy, Parental Rights, and Right to Bodily Autonomy." In Count III, Plaintiffs claim violations of the Fifth and Fourteenth Amendments with respect to the "Right to Due Process." Plaintiffs again contend in Count III that their "fundamental rights" or "liberties" are being violated and challenge the Board's Policy as "arbitrary" or "irrational." Thus, Counts II and III mount a substantive due process challenge to the Board's Policy.

   a. The Board's Policy does not implicate any fundamental rights or liberties.

"Substantive due process protects fundamental rights and liberty interests." *Wells v. Columbus Tech. Coll.*, 510 F. App'x 893, 896 (11th Cir. 2013). Plaintiffs have failed to identify any fundamental rights and liberty interests that are implicated by the mask requirement.

Courts have uniformly concluded, with respect to the United States Constitution, that "there is no fundamental constitutional right to not wear a mask." *Klaassen*, 2021 WL 3073926, at *38 (collecting cases); *see also Oberheim v. Bason*, No. 4:21-CV-01566, 2021 WL 4478333, at *7 (M.D. Pa. Sept. 30, 2021) ("[C]hildren do not have a fundamental right to attend school without masks on."); *Guilfoyle*, 2021 WL 4594780, at *17 n.8 (C.D. Cal. Sept. 14, 2021) ("To the extent Plaintiffs allege their children have a fundamental right not to wear a mask or a fundamental right not to be screened for COVID-19 before entering their schools, the Fourteenth Amendment does not recognize such rights.").

Plaintiffs invoke the "Right to Privacy." "The United States Constitution does not expressly guarantee a right to privacy, but the Supreme Court has held that a right to privacy does exist

within the liberty component of the Fourteenth Amendment." *Padgett v. Donald*, 401 F.3d 1273, 1280 (11th Cir. 2005) (citing *Roe v. Wade*, 410 U.S. at 152-53 (1973)). The right to privacy protects two types of interests: "an individual's interest in avoiding disclosure of certain personal matters" and "an individual's personal autonomy in making certain important decisions, such as those involving marriage, contraception, and procreation." *Id.* Neither of these interests is implicated by the requirement that children wear masks while they are at school. *See Whitfield v. Cuyahoga Cty. Pub. Libr. Found.*, No. 1:21 CV 0031, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("While the government typically does not regulate what an individual must wear in the privacy of his or her own home, federal, state and local governments may govern what must be worn in public spaces, particularly when the health and safety of the general public are at issue."); *Forbes v. Cty. of San Diego*, No. 20-CV-00998-BAS-JLB, 2021 WL 843175, at *6 (S.D. Cal. Mar. 4, 2021) (mask requirement "does not concern the disclosure of sensitive information" and was not plausibly alleged to "interfere[] with the certain kinds of important decisions covered by Fourteenth Amendment privacy jurisprudence—those related to the most intimate of human activities and relationships.") (quotation marks omitted).

Plaintiffs also assert violations of their parental rights. "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). This includes the right "to direct the upbringing and education of children under their control." *Id.* (quoting *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535 (1925)). That said, there is no authority holding that "such a right is broad enough in scope to encompass an interest in keeping one's children from wearing a mask during a global pandemic." *Case v. Ivey*, No. 2:20-CV-777-WKW, 2021 WL 2210589, at *22 (M.D. Ala. June 1, 2021); *see also Oberheim*, 2021 WL 4478333, at *4 ("Plaintiffs have not identified, and the Court is not aware of, any cases standing for the proposition that school masking requirements violate parents' right to raise their children.").

There is no reason to conclude from the precedents about parents' rights that a mask requirement for students at school would implicate such rights. The Supreme Court has held that "[a]cting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (footnotes omitted). Thus, a parents' religious rights do not "include liberty to expose the community or the child to

7

communicable disease or the latter to ill health or death." *Id.* at 166–67. To that end, a parent lacks a substantive due process right to object to a mandatory vaccination requirement for school attendance. *See Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 355 (4th Cir. 2011); *see also Zucht v. King*, 260 U.S. 174, 176 (1922) (rejecting constitutional challenge to requirement that certificates of vaccination be presented to attend school; it is "settled that it is within the police power of a state to provide for compulsory vaccination."). Still other examples of school policies that have been upheld include "restrictions on part-time attendance, mandatory student participation in a community service program, and mandatory student attendance at a sexually explicit AIDS awareness assembly." *Oberheim*, 2021 WL 4478333, at *4 (footnotes omitted).

In short, "[a]lthough parents possess the right to raise their children as they see fit, they are not entitled to undermine the Government's public health efforts during a global pandemic by refusing to have their children comply with a school masking requirement." *Oberheim*, 2021 WL 4478333, at *4. Here, "Plaintiffs disagree with the efficacy of Defendants' COVID-19 mitigation measures, and believe requiring their children to comply with these measures interferes with their ability to direct their children's upbringing. The Due Process Clause does not recognize such a right, however." *Guilfoyle*, 2021 WL 4594780, at *16.

As for bodily autonomy, "[a] mask requirement does not plausibly qualify as a 'compulsory bodily intrusion.' Wearing a mask on the outer surface of one's face to cover one's nose and mouth does not 'intrude' within one's body; it certainly is significantly different in kind and degree from the circumstances at issue" in the Supreme Court's cases on the right to refuse medical treatment. *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *17 (S.D. Fla. Aug. 30, 2021) (citing *Washington v. Harper*, 494 U.S. 210 (1990); *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990)). "Nor can one plausibly allege that the government is requiring medical treatment by requiring individuals to wear a face mask." *Id.* "The requirement that an individual wear a mask in public … during a pandemic is a far cry from compulsory vaccination, mandatory behavior modification treatment in a mental hospital, and other comparable intrusions into personal autonomy." *Forbes*, 2021 WL 843175, at *8.

To the extent Plaintiffs are relying upon their right to attend public school, that is "a state-created, rather than a fundamental, right for the purposes of substantive due process." *C.B. By & Through Breeding v. Driscoll*, 82 F.3d 383, 387 (11th Cir. 1996). Accordingly, courts have rejected arguments that mask requirements trigger strict scrutiny because of an alleged infringement on a

fundamental right to education. *See Oberheim*, 2021 WL 4478333, at *7; *Guilfoyle*, 2021 WL 4594780, at *14.

Finally, "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). To the extent that standard applies here, the Policy is not arbitrary for the reasons explained below. Courts have also rejected the argument that requiring wearing of masks is constitutionally "conscience-shocking." *See Zinman*, 2021 WL 4025722, at *17; *Forbes*, 2021 WL 843175, at *5. Indeed, while Plaintiffs clearly oppose the Board's Policy in strong terms, they do not even allege that it is "conscience-shocking," nor do their allegations plausibly suggest that it is.

      b.   The Board's Policy withstands rational basis review.

"Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014). "Under rational basis scrutiny, governments 'are not required to convince the courts of the correctness of their legislative judgments.'" *Id.* (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). "Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (quotation marks omitted).

"When we review a statute for rationality, generally we ask whether there is any rational basis for the law, even if the government's proffered explanation is irrational, and even if it fails to offer any explanation at all." *Jones v. Governor of Florida*, 950 F.3d 795, 809 (11th Cir. 2020). "Indeed, 'a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "Under rational basis review, a court must accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). In short, this standard is "highly deferential" and action will be held unconstitutional under this standard "in only the most exceptional of circumstances." *Kentner*, 750 F.3d at 1281 (quotation marks omitted).

Courts have recognized controlling the spread of COVID-19 in the school community to be a legitimate state interest. *See Oberheim*, 2021 WL 4478333, at *8 ("It is beyond dispute that schools have a legitimate interest in promoting the health and safety of its students, which extends

to efforts to reduce the spread of COVID-19 among students and school employees.") (quotation marks and footnotes omitted); *Guilfoyle*, 2021 WL 4594780, at *14 ("Defendants have a legitimate interest in abating the COVID-19 pandemic and protecting the health of the District's large student body and staff."). Indeed, Plaintiffs do not plausibly allege that the Board lacks a legitimate state interest here. Rather, they seem to challenge how compelling the interest is (by questioning the severity of COVID-19) or whether the solution is a proper response to the problem (the efficacy of face masks or alleged harmfulness of masks). *See, e.g.*, ECF No. 16, ¶¶ 354-55. In any event, the School Board requests that the Court take judicial notice of the transcript of the Board's deliberations, submitted with the Board's response in opposition to Plaintiffs' motion for preliminary injunction.[2] ECF No. 18-1. While the Board does not need to supply an explanation for its Policy on rational basis review, its deliberations nevertheless make plain that Policy was imposed based on concerns about COVID-19 in Palm Beach County and the school community. *See id.*, pp. 70-180.

The Board's mask requirement is also consistent with the guidance of the Centers for Disease Control and Prevention (CDC) and the American Academy of Pediatrics (AAP) for this school year about how to control the spread of the virus. The School Board again requests that the Court take judicial notice of the publications of the CDC and AAP, as it did in its response in opposition to Plaintiffs' motion for preliminary injunction. ECF No. 18, p. 3 n.3. In guidance published shortly before the beginning of the school year, both the CDC and the AAP recommended universal indoor masking by students, staff, teachers, and visitors to schools, with very limited medical exceptions, and they explained the reasons for their recommendations in detail. CDC, Guidance for COVID-19 Prevention in K-12 Schools, last updated Aug. 5, 2021[3]; AAP, COVID-19 Guidance for Safe Schools, last updated July 18, 2021.[4]

---

[2] The Court may judicially notice facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Taking judicial notice pursuant to Rule 201(b)(2) does not convert this motion to dismiss into a motion for summary judgment. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019).
[3] Available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Oct. 11, 2021).
[4] Available at https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/ (last visited Oct. 11, 2021).

Courts have recognized based on guidance of the CDC, for one, that "universal community use of masks is a widely accepted method to prevent the spread of COVID-19, despite Plaintiffs' contentions to the contrary." *Resurrection Sch. v. Hertel*, 11 F.4th 437 (6th Cir. 2021) (citation omitted); *see also Guilfoyle*, 2021 WL 4594780, at *15 ("Even without any of the foregoing evidence, Defendants have shown plausibly their COVID-19 mitigation measures are related rationally to their legitimate interest in abating the COVID-19 pandemic because they are consistent with applicable public health guidance and mandates on measures to curb the spread of COVID-19."); *Denis v. Ige*, No. CV 21-00011 SOM-RT, 2021 WL 1911884, at *9 (D. Haw. May 12, 2021) ("In the midst of a pandemic, it is clearly reasonable for state and local officials to follow the CDC's guidance.").

Plaintiffs dispute the efficacy of masks and cite various authorities in support, but this does not help them state a claim that the School Board's Policy is irrational. "Some may disagree with the public health efficacy of mask orders. But federal courts do not sit in a policy-checking capacity to second guess the wisdom of state legislative acts." *Oakes v. Collier Cty.*, 515 F. Supp. 3d 1202, 1209 (M.D. Fla. 2021). "[E]ven if [Plaintiffs'] authorities were reliable, the most [they] could show is that there was a debate among experts concerning the effectiveness of face masks. That does not mean that it was irrational for [the School Board] to follow the CDC, rather than [Plaintiffs'] chosen experts." *Denis*, 2021 WL 1911884, at *10. Put another way, "contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible claim that the rules are not rationally related to a legitimate government interest. At minimum, rational speculation could support the use of masks to … limit the spread of infected droplets during a pandemic." *Forbes*, 2021 WL 843175, at *5 (citation and quotation marks omitted).

Plaintiffs similarly allege that the Board "ignored" the alleged harms of wearing a mask. This too fails to show the Board's Policy is irrational because, whatever authorities Plaintiffs might be able to point to, the CDC and AAP addressed and refuted potential health concerns about wearing masks, including for children. The CDC has explained that "[r]esearch supports that mask wearing has no significant adverse health effects for wearers"[5] and that "[w]earing a mask does

---

[5] CDC, Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, last updated May 7, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html#anchor_1619457210222 (last visited Oct. 11, 2021).

11

not raise the carbon dioxide (CO2) level in the air you breathe."[6] The AAP has explained "[f]ace masks can be safely worn by all children 2 years of age and older, including the vast majority of children with underlying health conditions, with rare exception,"[7] while also directly refuting concerns that masks make it harder for children to breathe, affect their ability to focus or learn in school, interfere with their lung development, trap carbon dioxide, weaken the immune system by putting the body under stress,[8] or interfere with speech and language development or social communication.[9]

In short, the Board's Policy withstands rational basis review, as have many other governmental mask requirements during the COVID-19 pandemic, including for students in schools.

> 4. *Plaintiffs fail to state a claim for violation of their federal Equal Protection rights, because the Board's Policy does not infringe upon any fundamental rights or distinguish on the basis of a suspect classification, and it withstands rational basis review (Count IV).*

The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "This statement 'is essentially a direction that all persons similarly situated should be treated alike.'" *Deen v. Egleston*, 597 F.3d 1223, 1229 (11th Cir. 2010) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

---

[6] CDC, Your Guide to Masks, last updated August 13, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last visited Oct. 11, 2021).
[7] AAP, COVID-19 Guidance for Safe Schools, last updated July 18, 2021, available at https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/ (last visited Oct. 11, 2021).
[8] AAP, Kimberly M. Dickinson, MD, MPH & Theresa W. Guilbert, MD, MS, FAAP, Mask Mythbusters: Common Questions about Kids & Face Masks, last updated Aug. 5, 2021, available at https://www.healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Mask-Mythbusters.aspx?_ga=2.181418343.1158135175.1632846999-1352526432.1632497161&_gl=1*1exgfio*_ga*MTM1MjUyNjQzMi4xNjMyNDk3MTYx*_ga_ (last visited Oct. 11, 2021).
[9] AAP, Do Masks Delay Speech and Language Development?, last updated Aug. 26, 2021, available at https://www.healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Do-face-masks-interfere-with-language-development.aspx?_ga=2.181418343.1158135175.1632846999-1352526432.1632497161&_gl=1*1exgfio*_ga*MTM1MjUyNjQzMi4xNjMyNDk3MTYx*_ga_ (last visited Oct. 11, 2021).

"Whenever the law classifies and treats people differently, then, we have occasion to ask whether the equal protection of the law has been violated." *Jones*, 950 F.3d at 808. "But the 'Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). "The Supreme Court's longstanding interpretation of the Equal Protection Clause accommodates those practicalities and respects the primary role of the legislature by requiring only a rational basis to sustain most state classifications." *Id.* "We look through a different prism, however, when the law classifies in certain suspect ways—prototypically, on the basis of race, gender, or national origin—or classifies in a way that burdens fundamental rights." *Id.* "Such classifications are subject to heightened scrutiny, a more exacting form of review." *Id.*

Plaintiffs' equal-protection claim is not clear, but they appear to make three arguments relating to equal protection. First, Plaintiffs allege that the children plaintiffs are being deprived of their "fundamental right to an equal education," as the Board is "allowing only masked children to attend school without being disciplined." ECF No. 16 ¶¶ 298-99. Second, they allege that the Policy "singles out" those students whose parents do not want them to wear masks. *Id.* ¶ 300. For the reasons discussed above, there is no fundamental right implicated by the mask requirement, however, including the right to an education or to attend school without a mask. Thus, Plaintiffs' first two arguments do not plausibly suggest anything other than rational basis review would apply. *See also W.S. by Sonderman v. Ragsdale*, No. 1:21-CV-01560-TWT, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the mask mandate. The mandate neither discriminates against a protected class nor infringes a fundamental right."); *Guilfoyle*, 2021 WL 4594780, at *17-18 (applying rational basis review to equal protection challenge to school mask requirement, rejecting plaintiffs' argument that strict scrutiny applied based on infringement upon right to education). As discussed above, the Board's facial covering requirement withstands rational basis review.

Third, Plaintiffs challenge the exemptions provision in the Policy, alleging that it "arbitrarily draws distinctions between students with 'approved' disabilities and non-disabled students based on differences irrelevant to any legitimate governmental objective." ECF No. 16 ¶¶ 301-02. The pertinent section of the Policy provides, "Exemptions or accommodations (including a plastic shield) to facial coverings must be verified by a treating licensed medical

physician as required by the ADA, or Section 504 of the Rehabilitation Act and agreed to by a compliant 504 Team." ECF No. 18-2, p. 2 (Policy 5.326 ¶ 3.a.viii); *see also* Policy 5.3261 ¶ 4.b.iii.

Plaintiffs do not allege that the classification with respect to exemptions is suspect or quasi-suspect (nor could they), so rational basis review is again the standard. *Jones*, 950 F.3d at 808. This limited exception is supported by the guidance of the CDC and the AAP. The CDC recommended exceptions only for "[a] person who cannot wear a mask, or cannot safely wear a mask, because of a disability as defined by the [ADA],"[10] while the AAP has stated that face masks could be safely worn by "the vast majority of children with underlying health conditions, with rare exception."[11] Further, the Board's deliberations on this point show that their concern in crafting the exception was to protect the needs of all students who truly could not safely wear facial coverings, while preventing abuse of a broader, "doctor's note" exemption. *See* ECF No. 18-1, pp. 87-88, 103-06, 112-17, 120-24, 129-32, 162-72. Thus, the exemption provision also withstands rational basis review.

\*\*\*

As a final point on Plaintiffs' federal constitutional claims, some courts confronting constitutional challenges to mask requirements have applied the analysis from the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), which upheld a compulsory vaccination requirement. "Though *Jacobson* was decided before tiers of scrutiny, it effectively endorsed—as a considered precursor—rational basis review of a government's mandate during a health crisis." *Klaassen*, 2021 WL 3073926, at \*21. As explained above, the School Board's Policy triggers rational basis review under the ordinary tiers of scrutiny. Thus, "the Court need not weigh in as *Jacobson* effectively applied rational basis review before it had a name. So the result is the same regardless." *Oakes*, 515 F. Supp. 3d at 1208 n.4. To the extent *Jacobson* applies something other than rational basis review, the School Board's Policy would satisfy its requirements for the reasons provided above. *See, e.g.*, *Parker v. Wolf*, 506 F. Supp. 3d 271, 291 n.20 (M.D. Pa. 2020) (mask requirement valid under *Jacobson* because it had "a real and

---

[10] CDC, Guidance for COVID-19 Prevention in K-12 Schools, last updated August 5, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Oct. 11, 2021).
[11] AAP COVID-19 Interim Guidance: Face Masks, last updated Aug. 11, 2021, available at https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/cloth-face-coverings/ (last visited Oct. 11, 2021).

substantial relation to public health" and did not "shock[] the conscience"; it was a "minor and fleeting inconvenience[], especially when compared to the widespread infectiousness and death that Defendants credibly seek to avoid").

> 5. *The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts V through IX).*

For the reasons provided above, Plaintiffs' federal claims should be dismissed for failure to state a claim. Plaintiffs bring five claims for declaratory judgment relating to Florida law in Counts V through IX. While Plaintiffs bring these claims through the federal Declaratory Judgment Act, there must be an independent basis for jurisdiction over the claims. *See Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) ("An action under the Declaratory Judgment Act, does not, of itself, confer jurisdiction upon the federal courts; therefore, a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.") (quotation marks omitted). That independent basis for jurisdiction would be 28 U.S.C. § 1367, which governs the Court's supplemental jurisdiction over those claims asserted in conjunction with Plaintiffs' federal claims. As explained below, the Court should decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c).

First, if the Court agrees that Plaintiffs' federal claims are due to be dismissed, section 1367(c)(3) provides that the Court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). This alone provides a sufficient basis for dismissing Plaintiffs' state law claims.

Second, the Court may decline to exercise supplemental jurisdiction over a claim if it "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). For instance, where the parties disagreed about whether a decision of the Florida Supreme Court created a cause of action for the conduct at issue in the case, the court "refuse[d] to decide this novel and complex question of state law as it is precisely the type of issue which should be dismissed pursuant to 28 U.S.C. § 1367(c)(1)." *Winn v. N. Am. Philips Corp.*, 826 F. Supp. 1424, 1426 (S.D. Fla. 1993). As another example, the court declined jurisdiction where the plaintiff's argument for the viability of the cause of action depended on a single decision, which "appear[ed] to be a unique case," from a Florida intermediate appellate court, and "whether and how this case will be extended to the facts of this

case is a novel issue of state law best decided by a state court." *Borges v. City of W. Palm Beach*, 858 F. Supp. 174, 177 (S.D. Fla. 1993). Similarly here, all of Plaintiffs' state law claims, in one way or another, raise novel issues of Florida law for which there is not readily applicable Florida (or Eleventh Circuit) precedent.

Counts VI, VII, and VIII make claims under Florida's Constitutional provisions regarding due process (Article I, Section 9), equal protection (Article I, Section 2), and the right to privacy (Article I, Section 23). While there is now extensive case law on their federal counterparts as they relate both to governmental and school mask requirements, Florida's due-process and equal-protection provisions have not been interpreted and applied in this context yet, at least not in a published decision from a Florida appellate court.[12]

As for Florida's right-to-privacy provision, while two intermediate appellate courts addressed whether a county's mask requirement for the public at large implicated the right to privacy, they came to conflicting conclusions about whether it did, and the Florida Supreme Court has not resolved the conflict. *Compare Machovec v. Palm Beach Cty.*, 310 So. 3d 941, 948 (Fla. 4th DCA 2021) ("no viable constitutional claim" presented in challenge to county's facial covering mandate) *with Green v. Alachua Cty.*, 323 So. 3d 246 (Fla. 1st DCA 2021) (county's mask mandate implicated the right of privacy). Further, no Florida appellate court appears to have analyzed whether the right to privacy would be implicated by a mask requirement in the distinct context of students attending public school.

Plaintiffs' remaining state law claims in Counts V and IX attack the Board's authority to have a Policy on masks in schools as it relates to new Florida laws and rules, namely the Parents' Bill of Rights, §§ 1014.01-.06, Fla. Stat., which took effect on July 1st of this year, and emergency rules from Florida's Department of Health promulgated in August and September. *See* Fla. Admin. Code. 64DER21-12, 64DER21-15. There are no Florida appellate decisions interpreting any of these legal provisions or otherwise addressing Plaintiffs' contentions about the School Board's authority as it relates to requiring students to wear facial coverings.

*Scott v. DeSantis* represents the only Florida case law to date on the Parents' Bill of Rights,

---

[12] In *Machovec v. Palm Beach Cty.*, 310 So. 3d 941, 944 (Fla. 4th DCA 2021), the plaintiffs made a claim under Florida's due-process provision in the trial court, which was rejected, and they did not pursue that claim on appeal. Another federal district court in Florida failed to address the claim squarely, concluding it was moot under the facts of the case. *See Oakes v. Collier Cty.*, No. 220CV568FTM38NPM, 2020 WL 6591194, at *3 (M.D. Fla. Nov. 11, 2020).

and it is a trial court decision. *Scott v. DeSantis*, No. 2021-CA-001382, 2021 WL 3964493, at *3 (Fla. 2d Cir.Ct. Sep. 02, 2021). The trial court appeared to interpret it to "permit[] school boards to adopt policies regarding the healthcare of students (such as a face mask mandate) even if a parent disagrees with the policy," but to require "that the policy be reasonable, is necessary to achieve a compelling state interest, and be narrowly tailored and not otherwise served by a less restrictive means." *Id.* at *7. The School Board does not agree that the Parents' Bill of Rights is even implicated by a mask requirement, but the trial court seemed to accept this point without much analysis. In any event, the case is now on appeal, and the First District Court of Appeal has signaled that reversal is likely for threshold, rather than merits-based reasons. *See DeSantis v. Scott*, Case No. 1D21-2685 (Fla. 1st DCA Sept. 10, 2021), filed with the Court in the *Hayes* case at ECF No. 89-1. The Department of Health Rule was not specifically at issue in *Scott* because the Department of Health was not a party. *See Scott*, 2021 WL 3964493, at *8.

In short, Plaintiffs' state law claims all turn on novel issues of Florida law, a second and independent reason for declining to exercise supplemental jurisdiction.

As a final reason, the Court may decline to exercise supplemental jurisdiction "in exceptional circumstances," when "there are other compelling reasons for declining jurisdiction." 28 U.S.C § 1367(c)(4). Here, other proceedings in various Florida tribunals related to the issues raised by Plaintiffs' state law claims, provide sufficiently compelling reasons for declining jurisdiction.

Plaintiffs rely heavily on the Department of Health's Rule on COVID-19 protocols, 64DER21-15. That recently enacted Rule is currently being challenged in multiple proceedings, however. Five school boards have filed a petition to have the Rule declared invalid in Florida's Division of Administrative Hearings, however. *See School Bd. of Miami-Dade County, et al. v. Dep't of Health*, Case No. 21-003066RE (Fla. DOAH Oct. 6, 2021). Another petition challenging the Rule's validity has also been filed in Florida's Third District Court of Appeal. *See School Bd. of Miami-Dade County v. Fla. Dep't of Health*, Case No. 3D21-1971 (Fla. 3d DCA Oct. 1, 2021).

Further, as Plaintiffs have acknowledged to the Court, the School Board's compliance with 64DER21-15 (as well as that of several other school boards across the state) is at issue in separate proceedings before the State Board of Education. *See* ECF No. 22; Florida State Board of

17

Education, October 7, 2021 – Meeting Agenda.[13] The State Board of Education's final action in those proceedings will be subject to judicial review in the Florida courts. *See* § 120.68, Fla. Stat.

Finally, as Plaintiffs have also acknowledged, a separate group of plaintiffs has brought the same state law claims as Plaintiffs in a lawsuit in a Florida court against the School Board. *See* ECF No. 21-1; *Bolt v. School Bd. of Palm Beach County*, Case No. 502021CA011319 (Fla. 15th Cir. Ct. Oct. 4, 2021). While this litigation was filed after Plaintiffs' and involves a different group of plaintiffs, it involves the same legal issues, making this Court's exercise of jurisdiction a waste of judicial resources. *See Bridges v. Poe*, 6:19-CV-01399-LSC, 2020 WL 374668, at *3 (N.D. Ala. Jan. 23, 2020) (state court proceeding involving not "the exact same parties" but seeking to resolve "a question common to all parties in this action" presented "compelling reasons" not to exercise jurisdiction; "given that parallel proceedings are underway in state court, adjudication of Plaintiffs' declaratory judgment action in this Court would be a waste of judicial resources.").

> 6. *Count X for a Permanent Injunction should be dismissed because an injunction is a remedy, not a claim.*

In Count X, Plaintiffs seek a permanent injunction based on the federal and state law claims asserted in Counts I through IX. Notwithstanding the School Board's arguments above for the dismissal of Counts I through IX, Count X "subject to dismissal for a more fundamental reason—injunctive relief is a remedy, not an independent cause of action." *Humana Pharmacy Sols., Inc. v. Michelin*, No. 2081361CIVCANNONREIN, 2021 WL 3403950, at *10 (S.D. Fla. June 15, 2021). In other words, "an injunction is fundamentally not a 'claim showing that the pleader is entitled to relief.'" *Brevard Cty., Fla. v. Priceline.com, Inc.*, No. 609-CV-1695-ORL31KRS, 2010 WL 680771, at *5 (M.D. Fla. Feb. 24, 2010) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, Count X should be dismissed for failure to state a claim.

### III. Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant the following relief: (1) dismiss Defendants Michael Burke and Frank Barbieri, Jr., from this lawsuit; (2) dismiss Plaintiffs' Verified Amended Complaint in its entirety for failure to comply with Federal Rule of Civil Procedure 8; and (3) dismiss Plaintiffs' Verified Amended Complaint in its entirety: Counts I through IV and X for failure to state a claim upon which relief can be granted,

---

[13] Available at https://www.fldoe.org/policy/state-board-of-edu/meetings/2021/2021-10-07/ (last visited Oct. 11, 2021).

and Counts V through IX by declining to exercise supplemental jurisdiction.

Dated: October 11, 2021	Respectfully submitted,

By:	*/s/ Sean Fahey*
SEAN FAHEY, ESQ.
Florida Bar 0101083
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 1, 2021, the foregoing document was electronically filed via CM/ECF and served by e-mail on all counsel or parties of record on the Service List below.

THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA
Shawntoyia Bernard, Esq. - General Counsel
3300 Forest Hill Blvd., Suite C-331
West Palm Beach, FL  33406
Telephone: 561-434-8750
Facsimile:  561-434-8105
sean.fahey@palmbeachschools.org
ana.jordan@palmbeachschools.org
mary.quesada@palmbeachschools.org

By:	*/s/ Sean Fahey*
SEAN FAHEY, ESQ.
Florida Bar 0101083
*Counsel for the Defendants*

**SERVICE LIST**

Louis Leo, IV, Esq.
Joel Medgebow, Esq.
Cory C. Strolla, Esq.
Florida Civil Rights Coalition, P.L.L.C.
112 Bartram Oaks Walk
Suite 104 #600112
Saint Johns, FL 32259
louis@floridacivilrights.org
joel@medgebowlaw.com
strollalaw@yahoo.com
info@floridacivilrights.org